DENOLF v FRANK L. JURSIK COMPANY

1. CORPORATIONS—ACQUISITION OF CORPORATION—PURCHASE OF ASSETS
   —LIABILITY OF PURCHASER.
   An acquiring corporation which purchases the assets of another
   generally is not liable for the seller's liability absent some
   exception or consolidation or merger.

2. MOTIONS—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING VER-
   DICT—BURDEN OF PROOF.
   A defendant corporation's motions for a directed verdict of no
   cause of action on the ground that it neither designed, manu-
   factured, sold, nor installed a lift gate on a truck which injured
   the plaintiff, and its later motion for judgment notwithstanding
   the verdict should have been granted, where the plaintiff
   alleged faulty design and manufacture of the equipment but
   failed to prove manufacture, installation, and contractual or
   statutory liability on the part of the defendant corporation.

3. EVIDENCE—NEGLIGENCE—SUBSEQUENT REPAIRS—CHANGE OF CONDI-
   TIONS—SUBSEQUENT PRECAUTIONS—ADMISSIBILITY.
   Evidence of repairs, change of conditions, or precautions taken
   after an accident or injury almost universally is not admissible
   as evidence or an admission of negligence before the accident.

4. EVIDENCE—PHOTOGRAPHS—SUBSEQUENT REPAIRS—SUBSEQUENT PRE-
   CAUTIONS—JURY VIEW—ADMISSIBILITY—EXCEPTIONS.
   The admission of photographs showing subsequent repairs or
   precautions by a third party to a lift mechanism on a truck
   that caused an injury to the plaintiff and the jury's viewing of
   the truck in its changed condition, both over the objections of a
   defendant, were improper, where the defendant did nothing but
   install according to directions a system designed and manufac-

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am Jur 2d, Corporations §§ 1546–1553, 1558–1567.
   Liability of corporation for debts of predecessor. 149 ALR 787.
[2] 47 Am Jur 2d, Judgments § 970.
[3, 4] 29 Am Jur 2d, Evidence §§ 275, 628.
   Admissibility of evidence of repairs, change of conditions, or precau-
   tions taken after accident. 170 ALR 9, s. 64 ALR2d 1296.

tured by another party and the repairs were made by and at a time that the apparatus was under control of yet another party, and no clear foundation for exception to the general rule prohibiting evidence of subsequent repair was laid.

Appeals from Wayne, William J. Beer, J. Submitted Division 3 December 6, 1973, at Detroit. (Docket Nos. 14520, 14521.) Decided August 12, 1974. Leave to appeal applied for.

Complaint by Adhemar Denolf against Frank L. Jursik Company for damages for personal injuries received from a side-lift elevator on a truck. Third-party complaint by Jursik against Todco Division of the Overhead Door Corporation for indemnification and contribution. Verdict and judgment for plaintiff. Jursik and Todco appeal. Reversed as to Jursik and remanded for new trial. Reversed as to Todco without new trial.

*Charfoos & Charfoos (Hayim I. Gross, of counsel), for plaintiff.*

*Plunkett, Cooney, Rutt & Peacock (by John D. Dougherty), for Frank L. Jursik Company.*

*Vandeveer, Doelle, Garzia, Tonkin & Kerr (Haggerty & Franklin, of counsel), for Todco Division of the Overhead Door Corporation.*

Before: V. J. BRENNAN, P. J., and QUINN and CARLAND,* JJ.

CARLAND, J. This is a consolidated appeal from a jury verdict in favor of plaintiff Adhemar Denolf in the sum of $42,500 against Frank L. Jursik Company, a Michigan corporation, and Todco Divi-

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sion of the Overhead Door Corporation. Plaintiff's injuries were sustained in the course of his employment as a milkman for the Borden Company while operating a side-lift elevator mounted to the chassis of a truck owned by his employer. The lift was used to load and unload cargo while making delivery of Borden products.

On November 14, 1969, the plaintiff, a long-time employee of Borden, was making deliveries and in so doing was for the first time using the truck in question. The lift about which this controversy revolves was also being used and operated by plaintiff for the first time. After making his last delivery at the "Sweden House Restaurant" in St. Clair Shores, the plaintiff began to put the lift into the travelling position. This operation, however, was never completed. Because plaintiff had a new truck equipped with a new lift, he wanted to demonstrate the same to an employee of "Sweden House". He lowered the lift, dropped the pan and plaintiff and said employee stood on the pan and inspected the interior of the truck body. The lift was so designed that it could be activated or stopped through the use of one or two control levers located on either side of the mechanism.

After inspecting the interior of the truck, the two men stepped off the pan and plaintiff, using both hands, then picked up the pan from its horizontal position and rotated it in an arc to its vertical position. Plaintiff removed his right hand from the pan edge and with his left hand attempted to push the pan into its cradle. In some manner, although plaintiff testified that he touched neither control lever, the lift was activated and plaintiff's left hand was caught between the pan and the bottom of the truck resulting in injuries for which recovery is sought.

The lift in question was manufactured by H. S. Watson Company and sold by it to defendant and third-party plaintiff F. L. Jursik Company, hereinafter called Jursik, on or before February 20, 1967. It was installed by Jursik on Borden's truck shortly before September 25, 1969 when the truck was first put into operation. The installation was done pursuant to blueprints "drawn by H. S. Watson Company of Emeryville, California and Toledo, Ohio", in June of 1968. Todco Division of Overhead Door Corporation (hereinafter called Todco) acquired the Watson-Atlas Division of H. S. Watson Company. This was well over a year after the sale to Jursik. It should also be noted that H. S. Watson Company still maintains its corporate identity.

In March of 1970, plaintiff filed this action against Jursik alleging unsafe installation and design of the lift as the proximate cause of his injuries. These allegations are denied by Jursik.

During pretrial discovery, a witness testified that the name "Todco" appeared on some portion of the equipment, whereupon and without further investigation, Jursik filed a third-party complaint against Todco alleging faulty design and manufacture of the equipment by Todco and seeking indemnification and contribution in the event plaintiff obtained a judgment against it. Thereafter, plaintiff adopted Jursik's third-party complaint.

Some three days prior to trial, it was established for the first time that the lift had in fact been manufactured by H. S. Watson Company and not Todco. Jursik thereupon filed a motion for adjournment and permission to add Watson as a third-party defendant. This motion was denied and the case proceeded to trial.

At the conclusion of plaintiff's proofs, Todco moved for a directed verdict of no cause for action

on the ground that it had neither designed, manufactured, sold, nor installed the lift gate. This motion was renewed at the close of Jursik's proofs and again renewed at the conclusion of all proofs. Following verdict, Todco's motion for judgment notwithstanding the verdict or in the alternative for a new trial was also denied, as had been the previous motions.

The question of whether the trial court's denial of the motions made by Todco as set forth above resulted in reversible error should first be answered, because if answered in the affirmative, it will be dispositive so far as Todco's liability is concerned.

The undisputed proofs establish that the lift was manufactured by H. S. Watson Company and sold to Jursik some two and one-half years prior to the accident. There are no proofs that Todco participated in the installation of the lift on the Borden truck. Neither is it disputed that in June of 1968, Todco acquired Watson-Atlas Company, a division of H. S. Watson Company. No proofs were offered as to the relationship between H. S. Watson and Watson-Atlas other than that the latter was described as a division of the former. Whether Watson-Atlas had a separate corporate existence or was only an operational division is left only to conjecture. We can therefore only conclude that certain assets of H. S. Watson were acquired by Todco. We are further left completely in the dark as to whether the acquisition was through merger, consolidation or purchase. The burden was upon those asserting Todco's liability to prove either manufacture or installation by Todco. This they failed to do. Upon such failure, Todco's liability can only be imposed because of this acquisition either by operation of law or by the terms of its

contract with Watson or by both. Here again, the burden of proof is upon the plaintiffs.

Since there are no proofs as to the terms of the contract, we must conclude that no Todco liability is thereby fixed.

The general rule is that an acquiring corporation which purchases the assets of another is not liable for the seller's liability absent some exception or consolidation or merger, 19 Am Jur 2d, Corporations, § 1546 *et seq.,* p 922 *et seq.* In *Chase v Michigan Telephone Co,* 121 Mich 631; 80 NW 717 (1899), the plaintiff was an employee of a construction company which was consolidated with defendant company. Plaintiff sought to hold defendant company liable in a tort action for injuries received by plaintiff while in the employ of defendant's predecessor. The plaintiff recovered below and the Supreme Court in granting a reversal said on page 634 as follows:

"The law is well settled in regard to liability of the consolidated or purchasing corporation for the debts and liabilities of the consolidating or selling corporation. Such obligations are assumed (1) when two or more corporations consolidate and form a new corporation, making no provision for the payment of the obligations of the old; (2) when by agreement, express or implied, a purchasing corporation promises to pay the debts of the selling corporation; (3) when the new corporation is a mere continuance of the old; (4) when the sale is fraudulent, and the property of the old corporation, liable for its debts, can be followed into the hands of the purchaser. *Austin v Bank,* 49 Neb 412 [68 NW 628 (1896)]. Plaintiff produced no evidence tending to bring the defendant within any of these cases."

Further, on page 636, the Court said:

"The record is barren of evidence to show a consolidation. It shows only a sale. The *onus probandi* was on

plaintiff to show that the purchase was made subject to the obligations of the construction company. Upon this point the record is also barren of evidence. The court should have directed a verdict for defendant."

No claim is here asserted by plaintiff as to any statutory liability of Todco. The portions of the applicable Michigan statutes in force at the time of the acquisition here in question as they pertain to this case were MCLA 450.53; MSA 21.53 and MCLA 450.55; MSA 21.55 (these sections of the act were repealed January 1, 1973 by the new Michigan corporation code and these sections have been consolidated in MCLA 450.1722; MSA 21.200[722]).

Whether liability is to be imposed by statute depends upon the form of acquisition and not merely that acquisition occurred. There appear to be three basic forms either by merger, consolidation or purchase. The statutes above referred to when read with MCLA 450.52; MSA 21.52 use the terms "consolidation and merger". Nowhere does the word "purchase" appear. Since the record is barren as to the form of acquisition, no statutory liability may be imposed upon Todco.

The plaintiffs having failed to prove manufacture, installation, contractual or statutory liability, the motions of Todco should have been granted and the case dismissed as to it. We reverse as to Todco without new trial. Todco may recover costs.

As above stated, the equipment here in question was purchased by Jursik from Watson on or before February 20, 1967. It was installed by Jursik on the truck owned by Borden sometime in September of 1969. In the interim between the date of the accident and the date of the trial, Borden caused to be installed a metal block on the underside of the truck chassis, thereby prohibiting the lift pan from rotating past the perpendicular when such

pan was at a certain height. The object of this installation was to prevent the lift pan from coming in contact with the connecting "tie rod" and "teardrop" and thereby accidentally activating the motor controlling such pan.

That it was the contention of plaintiff that had this metal block been originally installed no accident would have occurred is made demonstrably clear upon consideration of the testimony of plaintiff's expert:

"*Q.* In your opinion, say September 19, 1969, was there a method available to avoid that possibility?

"*A.* Yes, sir.

"*Q.* Could you tell the jury how that could be avoided:

"*A.* By installing a guard adjacent to this teardrop and this control rod.

"*Q.* And what effect would that have, sir?

"*A.* The guard would have been insulated, would have isolated the edge of the pan from coming in contact with either the teardrop or the control rod."

Not content with this testimony, the plaintiff then offered photographs clearly showing the changes made by Borden which were received over objection and likewise the jury, at the request of plaintiff, was permitted to view the truck in its changed condition, again over the objection of defendant.

Therefore we are confronted with the necessity of deciding whether the admissions of the photographs showing subsequent repairs or precautions by a third party, when coupled with the fact of view by the jury, constitutes error requiring reversal and new trial.

"It is almost universally held that evidence of repairs, change of conditions, or precautions taken after an accident or injury, is not admissible as evidence or an

admission of negligence before the accident. It has been said in support of the rule, that such evidence is incompetent or inadmissible because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue and to create a prejudice against the defendant. Many decisions emphasize, in excluding evidence of subsequent repairs made or precautions taken after an accident, that if the rule was otherwise and such evidence was to be admitted, it would amount to an admission or confession of negligence on the part of the defendant and would bring collateral issues into the case." 29 Am Jur 2d, Evidence, § 275, pp 323–324.

The above-stated general rule has been recognized in Michigan. Also recognized in Michigan are several exceptions to the general exclusionary rule of subsequent precautions. Among these exceptions are (1) impeachment of a witness's testimony that such precautions were not taken and, (2) to show ownership and control of the instrumentality causing plaintiff's injury and, (3) where defendant himself has already admitted that such precautions were taken and, (4) generally where such evidence is admitted to prove an issue collateral to defendant's negligence. See *Little v Borman Food Stores, Inc,* 33 Mich App 609; 190 NW2d 269 (1971); *Thompson v Essex Wire Co,* 27 Mich App 516; 183 NW2d 818 (1970); *Snider v Jennings,* 11 Mich App 562; 161 NW2d 594 (1968).

Although, as above stated, the reason for the rule is that such evidence implies a confession of negligence and that the admission of such evidence would discourage persons from taking subsequent precautions to avoid similar accidents in the future, Michigan courts have long recognized that another reason for this exclusionary rule is that

evidence of subsequent precautions is incompetent to prove foreknowledge of a dangerous condition, *Fulton Iron & Engine Works v Kimball Twp,* 52 Mich 146, 149; 17 NW 733 (1883).

In *Langworthy v Green Twp,* 88 Mich 207; 50 NW 130 (1891), our Supreme Court rejects the third-party exception to the exclusionary rule of subsequent precautions. There the plaintiff sued the township because of the claimed defective maintenance of a log road. Specifically, it was alleged that the township had allowed a log which formed a part of the roadbed to protrude above the surface of the highway. Over objection, one Fryburg, an overseer of highways of this road district, was permitted to testify that he cut off the exposed portion of the log subsequent to the accident. Fryburg was clearly a third party not directly involved in the lawsuit and the Court in holding that the admission of his testimony constituted reversible error said on pages 217–218 as follows:

"The evident purpose was to show that the township admitted by this act the defect, the dangerous character of this obstruction, and that the road was not reasonably safe by reason of its existence. After an accident a precaution may be taken which did not suggest itself before the accident, and, in the absence of any instructions from the court guarding the jury against the use of such testimony as an admission on the part of the township, the admission of the testimony is ground for reversal. *Fulton Iron & Engine Works v Kimball Twp,* 52 Mich [146; 17 NW 733 (1883)]; *Lombar v Village of East Tawas,* 86 [Mich] 14 [48 NW 947 (1891)]; *Hodges v Percival,* 132 Ill 53 (23 NE 423) [1890]."

We believe that the Michigan rule of the inadmissibility of evidence of subsequent repairs made by third persons because of the implication of negligence which might be made by a jury, when

coupled with the exclusionary rule that subsequent precaution is incompetent to prove foreknowledge of a dangerous condition, makes *Wallner v Kitchens of Sara Lee, Inc,* 419 F2d 1028 (CA 7, 1969), relied on by the plaintiff, inapplicable to the case at bar.

The photographs were improperly admitted against Jursik since it did nothing but install according to directions a system designed and manufactured apparently by Todco's predecessor and the repairs were made by and at a time that the apparatus was under the control of Borden.

In *Grawey v Genesee Road Commissioners,* 48 Mich App 742, 751; 211 NW2d 68 (1973), this Court has spoken as follows:

"The general rule prohibiting evidence of subsequent repair should be adhered to unless there is a clear foundation for an exception to the rule. Such evidence is tantamount to an admission of negligence and is bound to prejudice a defendant who is charged with negligent conduct. Upon retrial, this case should be tried on the facts as they existed before or at the time of the accident, and not on the basis of subsequent repairs which may or may not have been necessary."

There appears to be no clear foundation for exception to the rule in the instant case. We find no merit as to the other issues raised by Jursik.

Reversed as to Jursik and remanded for new trial. Jursik may recover costs.

All concurred.